

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad de Carreteras y Transportación | Certiorari |
| Recurrido | 2009 TSPR 164 |
| v. | 177 DPR ____ |
| CD Builders, Inc. | |
| Peticionaria | |

Número del Caso: CC-2009-114

Fecha: 28 de octubre de 2009

Tribunal de Apelaciones:

      Región Judicial de San Juan Panel IV

Juez Ponente:
      Hon. Gretchen I. Coll Martí


Abogado de la Parte Peticionaria:

      Lcdo. José Luis Cumbas Torres

Abogados de la Parte Recurrida:

      Lcdo. Luis A. Rivera Cabrera
      Lcdo. Ricardo Arturo Pérez Rivera
      Lcdo. Kermell Z. Hernández Rivera


Materia: Revisión administrativa procedente de la A utoridad de Carreteras y Transportación-Junta de Subastas


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correccione s del proceso de compilación y publicación oficial de las decisio nes del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad. ?

Autoridad de Carreteras y
Transportación

     Recurrida

        v.

                                    CC-2009-114

CD Builders, Inc.

     Peticionaria

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 28 de octubre de 2009

En un proceso de subasta formal, convocado por la Autoridad de Carreteras y Transportación, un licitador incluyó entre los pliegos de licitación un documento de fianza en el cual no se estableció la cantidad afianzada. Debemos resolver si dicho documento de fianza constituye una garantía de proposición aceptable o si, por el contrario, tal omisión constituye un defecto insubsanable que hace inaceptable la garantía de proposición y requiere la descalificación de la propuesta.

## I

La Junta de Subastas de la Autoridad de Carreteras y Transportación (en adelante la Junta de

Subastas) publicó un aviso de subasta referente a la ejecución de un proyecto de construcción denominado *Intersección a Desnivel de las Carreteras P.R. 17 y 181* (AC 0001736). El aviso de subasta indicaba la fecha límite para que los licitadores presentaran sus propuestas y requería que cada licitación estuviese acompañada por una garantía de proposición. Específicamente, el referido aviso exigió la prestación de "una fianza provisional equivalente al cinco por ciento (5%) de la propuesta y sujeto a las condiciones que se expresan en el Artículo 102.08 de las Condiciones Generales…".

El 24 de octubre de 2008, tras recibir las propuestas de cinco licitadores, la Junta de Subastas procedió a la apertura de los pliegos de licitación. Al examinar las diferentes licitaciones, la Junta de Subastas consignó en un acta de recepción la suma por la cual cada licitador presentó su proposición. LPC & D, Inc. (en adelante LPCD) resultó el licitador con la proposición más baja al licitar por la suma de $25,733,860. Por su parte, CD Builders, Inc. (en adelante CD Builders) presentó la segunda propuesta más baja por la suma de $27,400,000.

Durante el acto de apertura, la Junta de Subastas se percató de que LPCD omitió indicar la suma afianzada en el documento intitulado *"Bid Bond No. 2008-48"*, cuyo propósito era satisfacer la fianza provisional exigida en el aviso de

subasta.[1]  La Junta de Subastas le concedió a LPCD hasta el 27 de octubre de 2008 para que corrigiera el error. En el término concedido, LPCD presentó un nuevo documento de fianza con la deficiencia corregida.

El 28 de octubre de 2008, CD Builders envió una carta al presidente de la Junta de Subastas mediante la cual arguyó que LPCD debía ser descalificado como licitador pues, al momento de presentar su propuesta, no incluyó una fianza equivalente al cinco por ciento (5%), según lo exigía el aviso de subasta.  Además, CD Builders arguyó que procedía que la Junta de Subastas adjudicara la subasta a su favor.

En respuesta a dicha comunicación, el presidente de la Junta de Subastas envió una carta a CD Builders, fechada el 10 de noviembre de 2008, en la cual indicó que, según su criterio, el error cometido por  LPCD  era uno subsanable. Además le indicó que la omisión de consignar la suma afianzada en el documento de fianza no constituía un error que descalificara de forma automática a LPCD como licitador.  Por último, el presidente de la Junta de Subastas le informó a CD Builders que la propuesta presentada por LPCD estaba bajo la evaluación de distintas divisiones de la Autoridad de Carreteras y Transportación (en adelante la Autoridad) las cuales remitirían sus recomendaciones a la Junta.

---

[1] Así lo consignó la Junta de Subastas en el acta de recepción al indicar que LPCD "no incluyó la cantidad de cubierta de la fianza en el 'Bid Bond'".

Por su parte, CD Builders reiteró su oposición a que se catalogara el error cometido por LPCD como uno subsanable. Posteriormente, el Presidente de la Junta de Subastas suscribió una carta mediante la cual le notificó a CD Builders que la Junta recomendó la adjudicación de la subasta a favor de LPCD, el 24 de noviembre de 2008.

El 8 de diciembre de 2008, el Director Ejecutivo de la Autoridad adjudicó la *Subasta Formal P-09-09* a favor de LPCD. Dos días después LPCD presentó a la Autoridad las fianzas de pago y ejecución de la obra y el 12 de diciembre de 2008 ambas partes suscribieron el contrato sobre la ejecución del proyecto. El Director Ejecutivo de la Autoridad autorizó a LPCD a iniciar la ejecución de la obra.

Inconforme, CD Builders presentó ante el Tribunal de Apelaciones un recurso de revisión judicial acompañado de una moción en auxilio de su jurisdicción. Dicho foro, ordenó la paralización de la ejecución del proyecto hasta tanto resolviera el recurso ante su consideración. Posteriormente, el Tribunal de Apelaciones emitió una sentencia en la cual expresó que toda vez que LPCD presentó una licitación debía inferirse que aceptó todos los términos y condiciones de la subasta, inclusive el prestar una garantía de proposición por al menos el cinco por ciento (5%) de la cantidad propuesta. El foro intermedio sostuvo que el no incluir la cantidad correspondiente en el documento de fianza constituyó un defecto subsanable. Así, el Tribunal de Apelaciones confirmó la resolución mediante

la cual el Director Ejecutivo de la Autoridad adjudicó la *Subasta Formal P-09-09* a favor de LPCD.

De dicha sentencia, CD Builders acude ante este foro mediante un recurso de *certiorari* acompañado de una moción en auxilio de nuestra jurisdicción en la cual solicitó que ordenáramos que se paralizara la ejecución del proyecto AC 0001736. En síntesis, CD Builders aduce que erró el Tribunal de Apelaciones al determinar que el error cometido por LPCD era uno subsanable. Sostiene que la Junta de Subastas actuó de forma arbitraria y caprichosa al ignorar que la propuesta presentada por LPCD no cumplía con todos los términos y condiciones de la subasta y al permitir que LPCD presentara un nuevo documento de fianza de licitación para corregir la insuficiencia. Mediante resolución del 23 de febrero de 2009 expedimos el auto y ordenamos la paralización de la ejecución del proyecto AC 0001736. Con el beneficio de los argumentos de las partes, procedemos a resolver.

## II

### A

La contratación de servicios por parte de las agencias del gobierno está matizada por el interés público de promover la inversión adecuada, responsable y eficiente de los recursos del Estado. *Empresas Toledo v. Junta de Subastas*, 168 D.P.R. 771, 778-79 (2006). Así, el proceso de subasta como mecanismo para viabilizar la contratación gubernamental debe llevarse a cabo de modo que se proteja el erario "consiguiendo la construcción de obras públicas y

la adquisición de servicios de calidad para el gobierno al mejor precio posible". *RBR Const., S.E. v. Aut. de Carreteras,* 149 D.P.R. 836, 848-49 (1999). *Véanse además, Empresas Toledo v. Junta de Subastas*, *supra*; *Trans Ad de Puerto Rico, Inc. v. Junta de Subastas*, res. de 24 de junio de 2008, 2008 T.S.P.R. 110, 174 D.P.R. __. A su vez, las subastas gubernamentales tienen el objetivo de establecer un esquema que asegure la competencia equitativa entre los licitadores, evite la corrupción y minimice los riesgos de incumplimiento. *Id. Véanse además, Mar-Mol Co., Inc. v. Adm. Servicios Gens.,* 126 D.P.R. 864, 871 (1990); *Justiniano v. ELA,* 100 D.P.R. 334, 338 (1971).

En ausencia de un estatuto uniforme que regule las subastas realizadas por parte del gobierno y viabilice la consecución de los fines antes mencionados, corresponde a cada agencia ejercer el poder de reglamentación que le fuere delegado para establecer las normas que habrán de regir sus procedimientos de subasta.[2] *RBR Const., S.E. v. Aut. de Carreteras, supra,* pág. 850. *Véase, Trans Ad De Puerto Rico v. Junta de Subastas, supra,* págs. 8-9.

En particular, el artículo 11 de la Ley de la Autoridad de Carreteras y Transportación, Ley núm. 74 de 23 de junio de 1965, según enmendada, delega a dicha agencia

---

[2] Sobre este particular la sección 3.19 de la Ley de Procedimiento Administrativo Uniforme, Ley núm. 170 de 1988, establece que "[l]os procedimientos de adjudicación de subastas son procedimientos informales; su reglamentación y términos serán establecidos por las agencias". 3 L.P.R.A. 2169. *Véase, Empresas Toledo v. Junta de Subastas, supra,* pág. 779-80;

la facultad de establecer los procedimientos y guías que regirán sus procesos de subasta. 9 L.P.R.A. sec. 2011. El citado artículo dispone que la Autoridad, al evaluar las distintas proposiciones para adjudicar una subasta, considerará "aquellos factores, además del precio, que a su juicio permita[n] la selección más beneficiosa para la Autoridad…". *Id.* Entre otros factores, la Autoridad deberá considerar si la propuesta cumple con las especificaciones, las reglas y los reglamentos que la agencia haya aprobado. *Id.*

Con el propósito de establecer las normas para la tramitación, celebración y adjudicación de las subastas, la Autoridad adoptó el Reglamento de Subastas núm. 5263 de la Autoridad de Carreteras y Transportación de 30 de junio de 1995 (en adelante Reglamento de Subastas). En armonía con la Ley de la Autoridad de Carreteras y Transportación, el mencionado reglamento destaca como uno de sus objetivos el "[e]stablecer un proceso que sea justo para los [l]icitadores y que lleve a la selección de la propuesta que se considere más ventajosa para la Autoridad". Artículo III(D) del Reglamento de Subastas, *supra.*

Además de cumplir con las disposiciones del Reglamento de Subastas, cada propuesta debe satisfacer las condiciones específicas que la Autoridad establezca para una subasta en particular. *RBR Const., S.E. v. Aut. de Carreteras, supra,* pág. 850-51. *Véanse* además, artículo IX(2) del Reglamento de Subastas *supra*; artículo 11 de la Ley de la Autoridad de Carreteras y Transportación, *supra*. Dichas

especificaciones se establecen en los documentos de licitación, definidos en el Reglamento de Subastas como aquellos que "la Autoridad le proporciona al licitador o proponente, y a base de los cuales éstos someten su licitación o propuesta". Artículo IV(L) del Reglamento de Subastas, *supra*. Los documentos de licitación provistos por la Autoridad para la celebración de la *Subasta Formal P 09-09* incluyen, entre otros, el aviso de subasta y los "*Standard Specifications for Road and Bridge Construction*" (en adelante Condiciones Generales).

Examinemos las disposiciones del Reglamento de Subastas y de los documentos de licitación, pertinentes a la controversia que nos ocupa.

**B.**

El artículo VII del Reglamento de Subastas establece los procedimientos que rigen la celebración y adjudicación de una subasta formal. Entre otros aspectos, el citado artículo dispone que "[l]a Autoridad requerirá de los licitadores la presentación de garantías y/o pólizas de acuerdo a las condiciones de los documentos de licitación". Artículo VII(E)1 del Reglamento de Subastas, *supra*.

Según indicamos, el aviso publicado por la Autoridad para la *Subasta Formal P 09-09* requería que cada licitador presentara "una fianza provisional equivalente al cinco por ciento (5%) de la propuesta…". Se exigió así a cada licitador una garantía de proposición la cual, en el Reglamento de Subastas, se define como: "la **fianza requerida a ser prestada por el licitador o proponente**

**conjuntamente con su proposición, como garantía de que va a formalizar el contrato** si resulta el licitador o proponente agraciado con la adjudicación". Artículo IV(R) del Reglamento de Subastas, *supra*. *Véase, RBR Const., S.E. v. Aut. de Carreteras, supra,* pág. 843, esc. 2. En la eventualidad de que el licitador desista de otorgar el contrato la Autoridad retendrá la suma cubierta por la garantía de proposición.[3] *Id.*

Además, el aviso de subasta exigía que la garantía de proposición cumpliera con los términos expuestos en las Condiciones Generales. En particular, el inciso (a) de la sección 102.08 de las Condiciones Generales establece las siguientes especificaciones:

> The proposal guaranty shall be a certified check, or a cashier's check from a bank authorized to do business in Puerto Rico, **or a bid bond payable to the authority in an amount not less than the amount specified in the advertisement for bids and contract book.** The bid bond shall be executed in the form provided in the contract book or on the form provided by the surety company but written in substantially the same language as the Authority's form.
>
> […]

En iguales términos el inciso E(2) del artículo VII del Reglamento de Subastas, *supra*, prescribe que las

---

[3]."The purpose of a bid bond is to assure that such bidder, if bidder (offeror) proposal is accepted, will enter into a binding contract to do the work in accordance with such proposal… It provides that a certain amount of money will be paid in the event that a successful bidder in a public project fails to enter into a formal contract; it is a type of liquidated damages and its represents an added incentive to discourage the withdrawal of bids". 1 E. Mills and M. Rhodes, *Holme's Appleman on Insurance*, 2D Sec. 1.32 (1996).

garantías exigidas en un procedimiento de subasta "podrán prestarse en moneda del curso legal, en cheque certificado o giro postal o bancario a favor de la Autoridad, o mediante seguro de fianza ("Bid Bond") suscrita por una compañía de seguros debidamente acreditada por la Oficina del Comisionado de Seguros de Puerto Rico…". Además el citado artículo exige que **la garantía de proposición sea prestada "por una cantidad no menor a la indicada en los documentos de licitación o en el Aviso de Subasta"**. *Id.*

Es un hecho que no está en controversia que, en el presente caso, la Autoridad exigió una garantía de proposición la cual LPCD intentó satisfacer mediante un documento de fianza en el cual no se consignó la cantidad afianzada. Es decir, el documento presentado por LPCD no especificaba que la fianza hubiese sido expedida por la cantidad que se requirió en el aviso de subasta. La Junta de Subastas permitió que LPCD presentara un nuevo documento de fianza para corregir el error.

Debemos resolver si la Junta de Subastas ostentaba la facultad para permitir que LPCD presentara un nuevo documento de fianza o si, por el contario, la insuficiencia del documento original requería que se rechazara sin más la propuesta presentada por ese licitador. En cuanto a este aspecto es preciso referirnos a lo dispuesto en el Reglamento de Subastas y las Condiciones Generales.

### C.

Hemos expresado que las agencias administrativas, de ordinario, se encuentran en mejor posición que los

tribunales para evaluar las propuestas o licitaciones ante su consideración a la luz de los parámetros establecidos por la ley y los reglamentos aplicables. *AEE v. Maxon,* 163 D.P.R. 434, 444 (2004). *Véanse además, Empresas Toledo v. Junta de Subastas, supra,* pág. 779; *Torres Maldonado v. Junta de Subastas,* res. del 17 de enero de 2007, 2007 T.S.P.R. 7, 169 D.P.R. __. Como consecuencia de ello, los tribunales no debemos intervenir con el rechazo de una propuesta o la adjudicación de una subasta salvo que la determinación administrativa adolezca de abuso de discreción, arbitrariedad o irracionabilidad. *Empresas Toledo v. Junta de Subastas, supra,* pág. 783-84. *Véanse además, RBR Const., S.E. v. Aut. de Carreteras, supra; Torres Maldonado v. Junta de Subastas, supra,* pág. 15. Se reconoce pues discreción a las agencias administrativas en el ejercicio de su facultad de considerar licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la agencia y al interés público en general. *Empresas Toledo v. Junta de Subastas, supra,* pág. 779.

En ese tenor, el Reglamento de Subastas faculta a la Junta de Subastas para recibir y evaluar las propuestas presentadas por los licitadores y hacer recomendaciones al Director Ejecutivo "basadas en las especificaciones de la subasta y en armonía con los mejores intereses de la Autoridad". Artículo V(B)2 del Reglamento de Subastas, *supra.* En relación con dicha función, el inciso 2 del artículo IX del Reglamento de Subastas, *supra,* especifica

que la Junta de Subastas recomendará que no se adjudique la subasta al licitador que presente la propuesta por la suma más baja cuando éste incumpla con los términos establecidos en las condiciones de la subasta.

De otra parte, el Reglamento de Subastas dispone que, en el proceso de evaluación de las distintas propuestas, la "Junta [de Subastas] podrá, en el uso de su sana discreción, obviar cualquier informalidad o tecnicismo en los documentos de cualquier proposición, siempre que fueren errores subsanables". Artículo VII(F)6 del Reglamento de Subastas, *supra.* Ahora bien, la citada disposición no le confiere un poder ilimitado a la Junta de Subastas sino que le permite excusar a los licitadores por defectos en los pliegos de licitación que constituyan meros "tecnicismos" o "informalidades". Así, la Junta de Subastas está facultada para obviar aquellos defectos insustanciales que no constituyan un incumplimiento con los términos de la subasta y que puedan soslayarse sin lesionar los objetivos del proceso de subasta, por ejemplo, al favorecer a alguno de los licitadores en particular o aumentar el riesgo de incumplimiento. *Véase*, *RBR Const., S.E. v. Aut. de Carreteras*, *supra.*[4]

En armonía con el principio de discreción administrativa en el proceso de consideración y

---

[4] En *RBR Contrs., S.E. v. Aut. de Carreteras*, *supra,* resolvimos que la ausencia de fecha en un documento de fianza constituía un defecto insustancial que no ameritaba el rechazo de una licitación.

adjudicación de subastas, las Condiciones Generales aplicables a la *Subastas Formal 09-09* identifican ciertas instancias en las que se reserva a la Autoridad la facultad de descalificar un licitador y rechazar una propuesta. En *RBR Const., S.E. v. Aut. de Carreteras, supra,* indicamos que este tipo de reserva tiene el propósito de otorgar cierta flexibilidad a la agencia para que pueda actuar de forma que se protejan adecuadamente los intereses públicos implicados. *Id.,* pág. 852.

Además de reconocer que en ciertas instancias la Autoridad ostenta la discreción de rechazar una propuesta, las Condiciones Generales enumeran una serie de insuficiencias que requieren que la Junta de Subastas rechace la propuesta sin ulterior consideración. Así, la sección 102.14 de las Condiciones Generales distingue entre las instancias en las que el rechazo de la propuesta se reserva a la discreción de la Autoridad y otras en la que el rechazo es mandatorio. *Véase RBR Const., S.E. v. Aut. de Carreteras, supra,* pág. 855.[5]

Específicamente, y en lo pertinente a la controversia que nos ocupa, el inciso 5 de la sección 102.14 de las Condiciones Generales prescribe que en caso de que un

---

[5] En *RBR Contrs., S.E. v. Aut. de Carreteras, supra,* aplicaban las *Disposiciones Generales de las Especificaciones Estándar para la Construcción de Carreteras y Puentes de 1989.* Estas especificaciones, según discutimos entonces, distinguían entre circunstancias en las que el rechazo de una propuesta era mandatorio y otras en que era discrecional. Igual distinción se mantiene en las Condiciones Generales aplicables a la subasta objeto del recurso ante nuestra consideración.

licitador no incluya una garantía de proposición aceptable la Junta de Subastas deberá rechazar su propuesta.[6]   Es decir, la ausencia de una garantía de proposición aceptable constituye un defecto insubsanable.   Ello nos enfrenta a la interrogante sobre si el documento de fianza presentado originalmente por LPCD constituyó una garantía de proposición aceptable a pesar de que no especificaba la suma afianzada.   Para resolver lo anterior debemos referirnos a nuestro análisis en *RBR Const., S.E. v. Aut. de Carreteras, supra*.

### III

En *RBR Const., S.E. v. Aut. de Carreteras, supra*, consideramos, específicamente, si la omisión de la fecha de subasta en el documento de fianza constituía una deficiencia que justificara descalificar una propuesta de licitación. Resolvimos que la referida deficiencia era una "inocua e insustancial" que no justificaba el rechazo de una licitación que cumplía con el resto de los requisitos. *Id.*, pág. 855-56.   Al así resolver ponderamos los siguientes elementos:

---

[6] En lo que nos concierne, el texto de la sección 102.14 de las Condiciones Generales dispone lo siguiente:

"102.14    Rejection    of    Proposals    and Disqualification of Bidders

The Board of Awards will reject a proposal for any of the following irregularities: [….]

(5) If the proposal does not include an acceptable proposal guaranty."

> (1)[l]a fianza había sido válidamente emitida por una compañía aseguradora aprobada por el Comisionado de Seguros de Puerto Rico; (2) se describía con precisión la obra a afianzada; (3) **se emitió por la cantidad requerida**;(4)la ACT había obviado esta omisión en ocasiones anteriores; y (5) la propia ACT admite en su carta a FHA que se trata de una deficiencia subsanable.

*Id.*, pág. 856. (Énfasis suplido.)

En *RBR Const., S.E. v. Aut. de Carreteras*, *supra,* determinamos que el documento de fianza "cumplía con todos los requisitos sustantivos". *Id.*, pág. 856. Así, la ausencia de fecha en el documento de fianza constituyó un defecto insustancial porque del documento surgía que dicha garantía se expidió en relación con el proyecto objeto de la subasta y por la cantidad requerida en los documentos de licitación.

A diferencia de los hechos de *RBR Const., S.E. v. Aut. de Carreteras*, *supra,* en el presente caso se presentó un documento de fianza en el cual no se incluyó la cantidad afianzada y por tanto no se consignó que la fianza satisfacía la cantidad requerida en el aviso de subasta. A pesar de que el documento de fianza presentado por LPCD cumple con los demás elementos enumerados en *RBR Const., S.E. v. Aut. de Carreteras*, *supra,* éste carece de un elemento esencial al no establecer que la fianza se expidió al menos por la cantidad exigida en el aviso de subasta.

Admitir que es aceptable un documento de fianza en el cual no se ha consignado la suma afianzada eliminaría la efectividad de la garantía de proposición. El documento de fianza viabiliza que la Autoridad reclame la suma afianzada

en caso de que el licitador agraciado no otorgue el contrato. Un documento de fianza en el cual no se consignó la suma afianzada no constituye una garantía de que la fianza expedida responde por la cantidad exigida en los documentos de licitación. Tal insuficiencia colocaría a la Autoridad en una situación de incertidumbre y riesgo en caso de que el licitador agraciado desista de otorgar el contrato.[7]

Precisamente, por ser el documento de fianza inicialmente presentado uno insuficiente, la Junta de Subastas requirió que LPCD presentara un nuevo documento. Esta actuación de la Junta de Subastas confirma que, en efecto, el documento de fianza originalmente presentado por LPCD no era uno aceptable a la luz de las exigencias del artículo VII del Reglamento de Subastas y de la Sección 102.08 de las Condiciones Generales. A tenor con el artículo IX de Reglamento de Subastas, *supra*, y con la sección 102.14 de las Condiciones Generales, la Junta de Subastas debió recomendar el rechazo de la licitación presentada por LPCD por ésta no incluir una fianza aceptable e incumplir, de este modo, los términos estipulados en las condiciones de la subasta. No incluir una fianza aceptable constituyó un defecto insubsanable que requería el rechazo de la propuesta.

Sin embargo, la Junta de Subastas permitió que LPCD presentara un nuevo documento de fianza de licitación por

---

[7] *Véase,* a modo ilustrativo*, Interstate Rock Products, Inc. v. U.S.,* 50 Fed. Cl. 349 (2001).

entender que el defecto era subsanable. Por su parte, el Tribunal de Apelaciones razonó que debía suponerse que el documento de fianza originalmente presentado por LPCD cubría al menos la cantidad exigida en el aviso de subasta. Ambos planteamientos son errados. No procede descansar en un acto posterior a la apertura –como presentar un nuevo documento de fianza– para subsanar un defecto que requería inicialmente la descalificación de la propuesta. *Véase, Accumail de Puerto Rico v. Junta de Subastas,* res. del 12 de abril de 2007*,* 2007 T.S.P.R. 70, 170 D.P.R. __. Tampoco procede descansar en inferencias sobre la intención del licitador para subsanar errores sustanciales en los pliegos de licitación.

Aunque, previo a adjudicación de la subasta, LPCD presentó un nuevo documento de fianza, ello no altera el hecho de que los pliegos de licitación inicialmente presentados adolecían de un defecto fatal. Como hemos discutido, la deficiencia de no incluir la suma afianzada en el documento de fianza convirtió dicha garantía en una inaceptable y, por tanto, constituyó un defecto insubsanable. Así pues, resulta irrelevante el que previo a la adjudicación de la subasta LPCD presentara un nuevo documento de fianza para intentar remediar un error que no podía ser subsanado.

Según surge del artículo IV(R) del Reglamento de Subastas, *supra*, la garantía de proposición debía presentarse en conjunto con la propuesta. Además, el aviso de subasta expresamente advertía que toda proposición debía

estar acompañada de una garantía de proposición. Es decir, al momento de la apertura de los pliegos cada licitador debía cumplir el requisito esencial de presentar una garantía de proposición aceptable. Según las Condiciones Generales, el incumplimiento con este requisito exigía el rechazo de la propuesta. La Junta de Subastas carecía de la facultad para eliminar esta exigencia y considerar una licitación que, inicialmente, incumplió con las condiciones de la subasta. Admitir lo anterior vulneraría los términos que regían el proceso de subasta y laceraría, además, el principio fundamental de competencia equitativa en la contratación gubernamental.

Permitir que un licitador subsane un defecto sustancial -como el no haber incluido una garantía de proposición aceptable conjuntamente con su propuesta- luego de la apertura de los pliegos de licitación, lesionaría el interés público de que los licitadores participen y sus propuestas sean consideradas en igualdad de condiciones. A pesar de que la Autoridad puede tener un interés en adjudicar la subasta a favor del licitador que presente la propuesta más ventajosa en términos económicos, éste no constituye un elemento que justifique sacrificar el principio de competencia equitativa entre los licitadores.

Concluimos que la omisión de incluir la suma afianzada en el documento de fianza no constituyó un mero tecnicismo o informalidad sino un defecto sustancial pues impedía considerar el documento de fianza presentado por LPCD como una garantía de proposición aceptable. Resolvemos que al

LPCD no incluir una garantía de proposición aceptable en conjunto con su proposición, procedía descalificar su propuesta de conformidad con el Reglamento de Subastas y las Condiciones Generales.

En suma, la determinación de la Junta de Subastas al permitir que LPCD presentara un nuevo documento de fianza para subsanar un defecto sustancial es contraria al Reglamento de Subastas y las Condiciones Generales y, además, vulnera objetivos fundamentales del proceso de pública subasta. Resolvemos que la Autoridad actuó de forma arbitraria al adjudicar la subasta a favor de un licitador cuya propuesta incumplió un requisito sustancial el cual requería la descalificación de la licitación.

## IV

Por los fundamentos que anteceden, revocamos la sentencia del Tribunal de Apelaciones. Devolvemos el caso al foro administrativo para trámites ulteriores compatibles con lo aquí resuelto. Corresponde a la Autoridad continuar el proceso de *Subasta Formal 09-09* de conformidad con lo establecido en la Ley de la Autoridad de Carreteras y Transportación y el Reglamento de Subastas.

Se dictará sentencia de conformidad.


Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Autoridad de Carreteras y
Transportación

    Recurrida

       v.

                                     CC-2009-114

CD Builders, Inc.

    Peticionaria


SENTENCIA

San Juan, Puerto Rico, a 28 de octubre de 2009

Por los fundamentos expresados en la Opinión que antecede, los cuales se incorporan íntegramente a presente, se dicta sentencia revocando la sentencia del Tribunal de Apelaciones. Devolvemos el caso al foro administrativo para trámites ulteriores compatibles con lo aquí resuelto. Corresponde a la Autoridad continuar el proceso de *Subasta Formal 09-09* de conformidad con lo establecido en la Ley de la Autoridad de Carreteras y Transportación y el Reglamento de Subastas.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre con el resultado sin opinión escrita. La Jueza Asociada señora Fiol Matta no intervino.


                        Aida Ileana Oquendo Graulau
                     Secretaria del Tribunal Supremo